IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EILEEN FAST,

    Plaintiff,

v.

COASTAL JOURNEYS UNLIMITED, INC., CAROL UNSER, ROGER UNSER, ANGELS MANAGEMENT, INC. dba GOLD BEACH RESORT, and ELDERHOSTEL, INC. dba ROAD SCHOLAR,

    Defendants.

Civ. No. 6:16-cv-00060-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Eileen Fast, a Florida resident, suffered extensive shoulder injuries after tripping in a parking lot while on a bus tour of the Oregon coast. Specifically, she tripped over a common tire block that is designed to stop vehicles from moving forward. The incident occurred shortly after Mrs. Fast departed her tour bus in the Gold Beach Resort parking lot.

    Defendants Elderhostel, Inc., Coastal Journeys Unlimited, Inc., and Carol and Roger Unser have previously been dismissed on Rule 12(b)(6) motions. Angels Management, Inc. dba Gold Beach Resort ("Gold Beach Resort"), the only remaining defendant, now moves for summary judgment for the following reasons: (1) Mrs. Fast cannot prove what she tripped on or where it was located; (2) the wheel stops did not present an unreasonable risk of harm to Mrs.

1 – OPINION AND ORDER

Fast; (3) sufficient warnings were given to Mrs. Fast so that she could detect and avoid the wheel stops; and (4) the wheel stops were open and obvious.

## FACTUAL BACKGROUND

### A. Time and circumstance

On September 21, 2015, the Plaintiff's tour bus made a scheduled stop at the Gold Beach Resort, a hotel where the passengers would be staying for the night. The bus parked between the Convention Center building and the hotel, parallel to the covered walkway at the north end of the Convention Center building. The bus passenger door faced the Convention Center, which was about twenty feet away.

After the tour bus parked, the passengers were provided with keys to their rooms and instructed to head to the hotel lobby. Mrs. Fast was the last passenger to exit the bus. There were approximately 40 other passengers in the immediate vicinity of the bus waiting for their luggage.

Mrs. Fast initially walked from the bus to the Convention Center, believing incorrectly it to be the hotel lobby. Once at the Convention Center, and realizing it was not the hotel lobby, Mrs. Fast turned around, and walked back into the parking lot toward the hotel. During this walk, she fell. The time was around 4:30 p.m.; it was daylight and the conditions were dry. At the moment directly before the fall, Mrs. Fast was looking forward at a resort staff member and not looking down. While Ms. Fast does not remember her fall or what might have precipitated it, at least two witnesses observed her trip over a wheel stop as she began to traverse the parking lot from the convention center.

### B. Parking lot condition

The resort parking lot contained white-painted wheel stops, the purpose of which is to keep cars from rolling beyond the individual parking space. The parking lot had been resurfaced

2 – OPINION AND ORDER

a few months prior to the incident and the parking space lines and wheel stops were freshly painted bright white, contrasting with the newly resurfaced black lot.

## STANDARD OF REVIEW

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. An owner's duty to a business invitee

In general, a business owner or possessor of land has a duty to make their premises reasonably safe for an invitee's visit. *Glorioso v. Ness*, 191 Or. App. 637, 643 (2004). In making the premises reasonably safe, the owner must exercise due care to discover conditions of the premises that create an unreasonable risk of harm to the invitee. *Id*. The owner must exercise that standard of care either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm. *Id*.

3 – OPINION AND ORDER

Accordingly, property owners are " 'liable to invitees only for conditions that create an unreasonable risk of harm to the invitee.' " *Id*. citing *Andrews v. R.W. Hays Co.,* 166 Or.App. 494, 503 (2000) (quoting *Jensen v. Kacy's Markets, Inc.,* 91 Or.App. 285, 288, *rev. den.,* 306 Or. 413 (1988)). A condition is not unreasonably dangerous if the hazard arising from it would be known and understood by reasonable persons expected to encounter the condition." *Maas v. Willer*, 203 Or. App. 124, 127 (2005). The invitee has their own duty to exercise that same standard of care in avoiding harm from a condition of the premises of which the invitee knows, or, in the exercise of that standard of care, of which the invitee should know. *Id*. at 129.

## II. Analysis

### (A) Sufficiency of evidence to prove causation:

Gold Beach Resort first argues that because Plaintiff cannot personally remember if she tripped over a wheel stop, as opposed to a piece of luggage or her own feet, she is unable to prove causation. Def.'s Mot. Br. 7, ECF No. 49. This argument collapses with the declarations of two fact witnesses who observed Mrs. Fast trip over a wheel stop in the Gold Beach Resort parking lot. Pl's Resp. Br. 3-4, ECF No. 57. Their uncontradicted observations are enough for a reasonable juror to conclude that the wheel stop was a causal factor with respect to the fall that took place and the ensuing injury. A factfinder does not have to engage in "speculation" in order to reach a factual conclusion with regards to causation. *See, Griffin v. K.E. McKay's Market of Coos Bay, Inc.*, 125 Or App 448, 451-52 (1993). Here, the declarations of the witnesses leave little room for speculation as to how Ms. Fast was injured.

### (B) "Unreasonably dangerous condition"

Defendant next argues that the wheel stop is not an "unreasonably dangerous condition." While both sides concede there is no case that directly speaks to the presence of tire stops in a

parking lot, defendant relies primarily on two Oregon cases: *Andrews v. R.W. Hays Co.*, 166 Or. App. 494 (2000) and *Glorioso v. Ness*, 191 Or. App. 637 (2004).

In *Andrews,* the plaintiff tripped on a step in front of a convenience store. 166 Or. App. 494 (2000). The step was one and one-half inches to two inches in height, and its surface was concrete above and asphalt below. The plaintiff did not visually perceive the step-down; rather she believed the area to be level. The fall occurred around mid-day on a dry summer day. No prior tripping or slipping accidents had occurred on the premises. Defendants provided no warning of the step-down. The court held that, without more (such as inadequate lighting, a slippery surface, or admissible evidence of prior similar accidents), "a step-down of 1–1/2″—2″ from a walkway to a parking lot, which has a level appearance, was not an unreasonably dangerous condition as a matter of law." *Id.* at 505.

Similar to *Andrews*, the plaintiff in *Glorioso* tripped and fell on a step, this time in the middle of a backyard wooden deck. 191 Or. App. 637 (2004). The step was five to six inches in height, and was composed of two-by-four decking material both above and below. The deck was dry, not slippery, and lighting had nothing to do with the plaintiff's fall. The court found that such facts were legally insufficient to impose liability on a defendant property owner:

> "A step located in a place where steps normally may be found, or with indications in the surrounding area that steps are present, with a surface of the same appearance both above and below, with no deceptive lighting, not covered with slippery substances, and with no established history of causing injury, does not pose an unreasonable risk of harm giving rise to a concomitant duty to warn."

*Glorioso*, 191 Or. App. at 645 (2004).

Defendant argues that the *Andrews* and *Glorioso* cases are determinative and closely mirror the facts presented here. The plaintiff's fall occurred during the day. The weather was dry. There is no evidence the wheel stop was slippery. The wheel stops are painted a bright white

5 – OPINION AND ORDER

florescent color in stark contrast to the black lot. There is no evidence of previous tripping incidents on the same wheel stop or wheel stops in the general area where the fall occurred. Def.'s Mot. Br. 10, ECF No. 49.  Plaintiff attempts to distinguish both *Andrews* and *Glorioso*. While there was no history of prior tripping or slipping incidents occurring on the premises to support negligence in either of the cases, here there is a single prior incident within the last ten years that involved a person tripping over a wheel stop, albeit in a different location within the parking lot.

      Plaintiff's primary response, however, comes in the form of the Declaration of William Martin, a purported expert in parking lot and walkway safety and design. Pl.'s Resp. Br. 4-6, ECF No. 57. Through their expert, plaintiff asserts that wheel stops are a tripping hazard when placed in a foreseeable pedestrian walkway, such as outside the doorway to the convention center. To place a wheel stop in a foreseeable pedestrian pathway is to create an unreasonably dangerous condition. Established alternatives such as parking bollards or posts are necessary to remedy the inherent risk.

      Defendant replies that Mr. Martin's declaration should be stricken because the fact pattern in this case is simple, the conclusions that need to be reached are neither scientific or outside the realm of common sense, and Mr. Martin's testimony does not assist the fact finder in analyzing the evidence. Def.'s Reply Br. 3-4, ECF No. 58. Defendant also argues that the disclosure of the expert witness is untimely. Parties waived initial disclosure under Rule 26. Defendant served an interrogatory on plaintiff requesting the names of all experts who would be testifying at trial. Plaintiff objected on the grounds the request sought premature disclosure of expert opinions and violated the attorney work product doctrine. Plaintiff never supplemented its response to the interrogatories and the disclosure of Mr. Martin only came in response to the

present motion. As an alternative, defendant request that the court postpone ruling the summary judgment motion until defendant can depose Mr. Martin or present a rebuttal expert report.

A qualified expert is generally permitted to testify when their testimony would "assist the trier of fact to understand the evidence or determine a factual issue." *Little Oil Co. v. Atl. Richfield Co.*, 852 F.2d 441, 446 (9th Cir. 1988), citing *United States v. Arenal*, 768 F.2d 263, 269 (8th Cir. 1985). The test for admissibility is whether the jury will receive "appreciable help." *United States v. Gwaltney,* 790 F.2d 1378, 1381 (9th Cir. 1986), *cert. denied,* 479 U.S. 1104 (1987). Not every issue requires an expert in order to be resolved by a jury. When an issue concerns matters of common knowledge and experience, expert testimony has no value in assisting the factfinder and should not be admitted.[1] *See*, *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 398 (9th Cir. 1982). Indeed, there is a risk that a jury will defer their own common sense analysis of an issue to that of an expert simply because expert analysis is dressed in a cloak of science and inflated by the degrees and training of the witness. While I do not believe Mr. Martin's testimony in this case would assist the jury, for the reasons below, I find that the facts fail to establish negligence as a matter of law with or without his analysis.

## iv. Findings and Analysis

The claims in this lawsuit are based in common-law negligence and turn on the question of whether the wheel stop, considered within the particular circumstances at the moment of Plaintiff's trip and fall, is a condition that created an unreasonable risk of harm. There is not a claim for negligence *per se*; that defendant allegedly failed to follow a particular statutory

---

[1] "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702 Advisory Committee's Note (quoting Mason Ladd, *Expert Testimony,* 5 Vand. L. Rev. 414, 418 (1952)).

7 – OPINION AND ORDER

requirement, city ordinance, or building code. The simplicity of the claim weighs against the notion that expert testimony would assist a factfinder in making a decision on the relevant facts.

Plaintiff offers Mr. Martin's expert declaration and report in order to advance three points: (1) there exists an alternative to using a wheel stop, such as a parking bollard or post, (2) wheel stops are a dangerous tripping hazard when placed in a foreseeable pedestrian path, and (3) the wheel stop's bright white paint is an inadequate warning because its color is the same as the flush painted striping used to mark the individual parking spaces. Plaintiff's expert asserts that there exists a "standard of care" for walkway safety that requires that wheel stops not be placed in "a foreseeable pedestrian path." Decl. of Martin, Ex. 1, p. 8, ECF No. 57-1. In his analysis, the expert finds that "the parking area at the Gold Beach Resort was a pedestrian walkway" and placing a wheel stop in front of the Convention Center building creates a dangerous condition. *Id.* at p. 5.

### a. Alternatives to wheel stops

In determining whether there is liability or not, a factfinder is not to consider available alternatives to a wheel stop, such as a pollard or post. The question of liability is simply whether the wheel stop which plaintiff tripped over was an unreasonably dangerous condition thereby creating an unreasonable risk of harm. Because the question of liability does not turn on whether there exist alternatives to a wheel stop, any expert testimony on that issue would not help nor assist a factfinder.

### b. Wheel stop as a dangerous tripping hazard

As to Mr. Martin's second point, his conclusion that a wheel stop is a dangerous tripping hazard when placed in a foreseeable pedestrian path is a generalized, conclusory opinion which does not account for all of the factual details present in this case. The totality of the evidence in

this case demonstrates, as a matter of law, the wheel stop over which the plaintiff tripped and fell was not an unreasonable dangerous condition and was readily observable by those employing the reasonable use of their senses. As a matter of law, a wheel stop placed in a parking lot where a reasonable person would understand and expect to encounter a wheel stop is not an unreasonably dangerous condition. *See*, *Maas, supra*, at 127. Something more is required in order for a factfinder to find it to be an unreasonably dangerous condition, let alone a "dangerous tripping hazard" as characterized by Plaintiff's expert.

      This Court reaches its conclusion upon analysis of the law as stated in the two cases: *Andrews v. R.W. Hays Co.* and *Glorioso v. Ness*. The Oregon Court of Appeals has stated that "a step-down of 1–1/2″—2″ from a walkway to a parking lot, which has a level appearance, was not an unreasonably dangerous condition as a matter of law. *Andrews*, *supra*, at 505. The same court has also stated that "[a] step located in a place where steps normally may be found, or with indications in the surrounding area that steps are present, with a surface of the same appearance both above and below" is not a unreasonably dangerous condition. *Glorioso*, *supra*, at 645. As in those cases, no other factors are present here that may have contributed to the accident. The trip and fall occurred during the day, in sunlight, with no deceptive lighting or inadequate surface resistance. No foreign or slippery substance was present. A wheel stop is expected to be found in a parking lot, just as a step is expected to be found where steps are normally present. Under these normal sets of expectations, the presence of a wheel stop in the defendant's parking lot is not an unreasonably dangerous condition.

      Plaintiff's expert points out that the wheel stop is placed in a foreseeable pedestrian path where one would expect pedestrians to walk. This is a true observation, and it is true because the entire parking lot is a foreseeable pedestrian path. The same can be said of a wooden deck

(Glorioso) or a walkway in front of a convenience store (Andrews). A parking lot generally consists of parking spaces placed around its perimeter and in parallel aisles that run up and down the inner space of the lot. A driver will foreseeably park their vehicle in any available open space located throughout the lot. Upon exiting their vehicle, the driver becomes a pedestrian that would foreseeably traverse the parking lot in the most direct available route from their vehicle to their desired destination. Numerous foreseeable pedestrian paths crisscross the parking lot not only from a vehicle to the hotel's Convention Center, but from the Convention Center to the Lobby, from the Lobby to one of the many hotel rooms, perhaps from one hotel room to another and finally back to the vehicle.

Within the expert's report, "pedestrian path" and "pedestrian walkway" are used interchangeably. *See* Decl. of William Martin, Ex. 1, ECF No. 57-1.[2] This Court applies its own understanding that a pedestrian path is a route by which a pedestrian may choose to traverse while a walkway is an area designated for pedestrian use, such as a sidewalk or footpath. A pedestrian path does not necessarily follow a designated walkway, such as here where pedestrian paths will crisscross a parking lot. Meanwhile, a designated walkway generally signals to its user that it is generally free of tripping hazards. Where the Plaintiff tripped, while it is a foreseeable pedestrian path, is not a pedestrian walkway. The hotel did not designate that area as a walkway, an area generally free from of tripping hazards and where a reasonable person would not expect to encounter a wheel stop. The photos and aerial view of the hotel's parking lot establish that the parking lot is a discernable area. Decl. of Abby Michels, Ex. A, pp 55-57, ECF No. 50-1; Decl. of William Martin, Ex. 1, p 4, ECF no. 57-1. There is a clear boundary between the newly

---

[2] For example, the "Analysis" on page 5 reads: "[Defendant] violated the standards of care for walkway safety. . ." Compare to "Findings" on page 8 which reads: "[Defendant] placed wheelstops in foreseeable pedestrian paths."

10 – OPINION AND ORDER

resurfaced, black lot and the covered, gray concrete walkway just outside the Convention Center door. A reasonable person would understand that they were leaving a walkway and entering a parking lot, and could reasonably expect to encounter conditions normally found in a parking lot, to include wheel stops.

### c. Adequacy of warning

As to Plaintiff's expert's third point, plaintiff argues that because the wheel stops were painted the same bright white as the flush painted parking space lines, there was inadequate warning that the wheel stops were raised. In their original motion, defendant argues that if Gold Beach Resort had a duty to warn, visual warning was provided by the fact that the wheel stops were painted a bright white fluorescent color, which sharply and obviously contrasted with the black asphalt parking lot. Def.'s Mot. Br. 10-11, ECF No. 49.

Oregon law, as stated in *Andrews* and *Glorioso,* is that a step with a surface of the same appearance both above and below is not an unreasonably dangerous condition, and therefore, the law does not require the premise owner to warn. A wheel stop, which is a change in elevation of a few inches, located in a place where a wheel stop may normally be found, is not an unreasonable risk of harm. This remains true regardless of whether the wheel stop is painted in a manner that distinguishes itself from the parking lot's flat surface. Where there is no unreasonable risk of harm, there is no duty to warn. However, the wheel stop, having been recently painted bright white, does sharply and obviously contrast against the surrounding flat, black asphalt surface so as to provide sufficient warning even though none is required. There is also no evidence that the wheel stop's color, being the same color as the flat parking space lines caused Plaintiff to believe that the white paint indicated a flat surface. There is no evidence that

Plaintiff failed to observe the wheel stop because of its white color being similar to the flat parking space lines.

## CONCLUSION

Absent circumstances not present here, a wheel stop found in a place where a wheel stop may normally be found, such as at the top of a parking space, is not an unreasonably dangerous condition and does not create an unreasonable risk of harm. Defendant Gold Beach Resort's Motion for Summary Judgment, ECF No. 49, is GRANTED.

IT IS SO ORDERED.

Dated this 16th day of December, 2016.

_____s/Michael J. McShane_____
Michael McShane
United States District Judge